UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DAVID KIRCHER and
MARTINA GLOSTER,

        Plaintiffs,

v.

CITY OF YPSILANTI, CHARLES BOULARD,
JOHN ICHESCO, OFFICER DORSEY,
JOHN DOE police officer, and ED KORYZNO,
individually and in their official capacity,

        Defendants.

_____/

CASE NO. 05-73425
HON. LAWRENCE P. ZATKOFF

## OPINION AND ORDER

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on May 8, 2007

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

This matter is before the Court on Defendants' Motion for Summary Judgment. Plaintiff Kircher has filed a response and Defendants' have replied. The Court finds that the facts and legal arguments are adequately presented in the parties' papers and the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. MICH. LR 7.1(e)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted. For the following reasons, Defendants' motion will be GRANTED in part and DENIED in part.

## II. BACKGROUND

Plaintiffs in this matter are proceeding pro se. This case arises from an incident on September 5, 2002, in Ypsilanti. On that date, Defendant Boulard, an official in Ypsilanti's building department, arrived at the address of 49 S. Summit Street in Ypsilanti to investigate the suspected illegal occupancy of a rental house and to secure the premises. The house in question was registered with the City as a one- or two-unit rental property. As such, the City required a valid certificate of compliance for the house certifying that the house met the relevant building codes and ordinance requirements. The last certificate of compliance for the home in question expired in January 2002. Plaintiff David Kircher owned the rental property involved in this case as well as several others in Ypsilanti. He lives directly across the street from the house involved in this case.

On September 5, 2002, workers from the Ypsilanti Building Department noticed people on the porch of 49 S. Summit Street and moving in and out of the premises. Defendant Boulard and officials from the Building Department arrived on the scene and found the front door of the house open and loud music playing inside. Defendant Boulard requested police assistance and Defendant Dorsey, an Ypsilanti police officer, arrived later with two other officers. Officer Dorsey entered the home and found four individuals inside along with personal items and food, indicating that the house was occupied. Officer Dorsey questioned the occupants about their presence, including Plaintiff Gloster. Officer Dorsey then indicated that no one should be occupying the house and instructed the individuals to collect their personal belongings and vacate the premises.

As the individuals were leaving the house, Defendant Boulard and Building Department staff began to inspect the home. Based on the inspection, the home appeared unfit for human occupancy.

During the inspection, Fire Inspector Ichesco[1] arrived but did not enter the home. Ichesco authorized the Building Department personnel at the scene to board up the home to prevent unauthorized access. While the home was being secured, Plaintiff Kircher arrived and protested Defendants' actions. Kircher argued, and still argues, that the home was no longer a rental property and that no certificate of occupancy was required. Notwithstanding Kircher's protests, the home was secured by boarding up the windows and locking the doors. Kircher possessed the keys to the locks and still has access to the home.

Kircher was prosecuted and convicted by a jury for violation of Ypsilanti Ordinance § 18-146(b), which states: "[n]o person, either the owner or the owner's agent shall allow occupancy of a dwelling unit or sleeping unit after September 1, 1999, in a one- or two-unit rental dwelling, unless that owner or owner's agent has first obtained a valid certificate of compliance from the city building inspection department covering that unit." Ord. § 18-146(b). During the criminal action, Kircher contested the legality of the search of his premises, arguing that Defendants entered the house without a warrant. The trial court denied Kircher's motion to suppress the fruits of the search and ruled that it complied with the Fourth Amendment. A jury thereafter convicted Kircher of violating the Ypsilanti ordinance. Following his conviction, Kircher appealed to the Washtenaw County circuit court, which affirmed the conviction as well as the trial court's ruling on Kircher's Fourth Amendment argument. Kircher also attempted to appeal this decision to the Michigan court of appeals, but was again denied "for lack of merit in the grounds presented." Defs.' Ex. 12.

Kircher had corresponded with Defendant Boulard prior to the incident that gave rise to this

---

[1] Fire Inspector Ichesco was named as a Defendant in this suit. However, the Court granted summary judgment in Ichesco's favor in an Opinion and Order dated October 4, 2006. *See* Docket #28.

suit. In August 2001, Boulard sent notice to Kircher that his certificate of compliance was due to expire in January and an inspection of the premises was required. Generally, certificates of compliance expire after two years. It is the home owners responsibility to schedule an inspection of the building prior to the certificate's expiration. Boulard sent another notice in May 2002, which scheduled an inspection for June 17, 2002. Kircher responded to this notice in writing, stating "49 S. Summit is not rented. No inspection requested. Do not schedule until I call. Cancel 6/17/ at 3:30." Defs.' Br. at 2. Boulard subsequently honored this request and canceled the inspection. However, Boulard also notified Kircher that because the house was considered vacant, the water services were to be terminated according to the City's ordinance. *See* Ypsilanti Ord. § 18-555. Kircher did not respond to this notice and the City terminated water services to the house on or about June 25, 2002.

Plaintiffs filed the instant action on September 6, 2005. Plaintiffs claim that Defendants violated their Fourth Amendment rights to be free from unreasonable searches and seizures when they entered the premises without a warrant. Plaintiffs also allege various violations of their procedural due process rights. Plaintiffs claim that they were denied due process when Defendants caused the water services to the premises to be discontinued, evacuated the premises, and boarded up the windows of the house. Defendants now seek summary judgment as to all of Plaintiffs' claims.

### III. LEGAL STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. PRO. 56(c); *accord Turner v. City of Taylor*, 412 F.3d 629, 637 (6th Cir. 2005). When deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences

4

in favor of the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Where the defendant demonstrates that after a reasonable period of discovery the plaintiff is unable to produce sufficient evidence beyond the bare allegations of the complaint to support an essential element of his or her case, summary judgment should be granted." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

## IV. ANALYSIS

### A. Plaintiff Gloster

On January 27, 2007, Plaintiffs were Ordered to Show Cause as to why Defendants' Motion for Summary Judgment should not be granted and were ordered to respond in writing by February 5, 2007. Plaintiff Kircher filed a timely response but Plaintiff Gloster did not. Therefore, Defendants' Motion for Summary Judgment is GRANTED as to Plaintiff Gloster.

### B. Plaintiff Kircher's Fourth Amendment Claim

Kircher argues that Defendants violated his Fourth Amendment right to be free from unreasonable searches when several of the individual Defendants entered his rental property without a warrant. On the other hand, Defendants contend that this claim is barred by collateral estoppel because Kircher unsuccessfully litigated his Fourth Amendment claim during the course of his criminal trial in state court. The Court finds that Kircher's Fourth Amendment claim is barred by collateral estoppel.

"[A] claim in a section 1983 suit may be subject to the preclusive effect of collateral estoppel when a motion to suppress the evidence based on a Fourth Amendment challenge was denied in the state criminal proceeding ...." *Carlton v. Pytell*, 986 F.2d 1421, 1993 WL 44514 (6th Cir. 1993). The

Full Faith and Credit Act, 28 U.S.C. § 1738, requires "federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgment emerged would do so." *Allen v. McCurry*, 449 U.S. 90, 96 (1980). Since Kircher was convicted in Michigan, its rules of collateral estoppel apply. In Michigan, collateral estoppel "bars the relitigation of issues previously decided when such issues are raised in a subsequent suit by the same parties based upon a different cause of action." *Knoblauch v. Kenyon*, 415 N.W.2d 286, 287 (Mich. Ct. App. 1987). Therefore, collateral estoppel applies when (1) the second action involves the same ultimate issues as the first, (2) the second action involves the same parties to the first action or their privies, and (3) and the parties have had a full opportunity to litigate the issues in the first action. *Id.* Finally, Michigan relaxes the mutuality requirement when the first suit is a criminal matter and the second is a civil matter. *See id.* at 712.

As part of his criminal proceeding in state court, Kircher moved to suppress evidence that was obtained by the search of his rental property, arguing that Defendants' search violated the Fourth Amendment because they did not have a warrant to enter his premises. The trial court denied this motion after the parties were given an opportunity to brief the issue and following oral argument, finding that Defendants' entry into the premises and search were legal without a warrant. This decision was affirmed by the Washtenaw County circuit court on Kircher's appeal. Again, Kircher was given an opportunity to brief the issue and present an oral argument.

The Court finds that the elements of collateral estoppel are satisfied in this case. The parties and issues are identical and Kircher had a full and fair opportunity to litigate this issue in his criminal proceeding. The legality of the search is the precise issue Kircher alleges as part of his Fourth Amendment claim in this case. Kircher's conviction was based in part on the evidence

6

obtained from the search of the premises. Not only did Kircher have an opportunity to litigate the issue before the trial court, but he litigated it again on appeal. Thus, Kircher's Fourth Amendment claim is barred by the doctrine of collateral estoppel. *See Haring v. Prosise*, 462 U.S. 306 (1983).

## C.  Plaintiff Kircher's Procedural Due Process Claims

Similar to Kircher's Fourth Amendment claim, Defendants argue that Kircher's procedural due process claim is barred by collateral estoppel. Defendants point out that Kircher unsuccessfully moved to dismiss his criminal charge arguing that Ypsilanti's ordinance was unconstitutionally vague. While Kircher's motion implicated due process, the constitutionality of the ordinance on its face is not at issue in this case. What is at issue is whether Defendants' application of the ordinance violated Kircher's due process rights. This issue was not litigated as part of the criminal proceedings against Kircher and, therefore, collateral estoppel does not completely bar his due process claim in this case. Nevertheless, collateral estoppel may preclude Kircher from relitigating certain issues that are relevant to his due process claim. Specifically, Kircher cannot contest (1) that he did not have a certificate of compliance for the house; (2) that the house was a one- or two-unit rental dwelling; (3) that the house was in fact occupied at the time Defendants arrived, evacuated the house, and secured it; and (4) that occupancy of the house was illegal.

The first step in evaluating whether Defendants' actions violated Kircher's procedural due process rights is to determine whether Kircher has alleged a violation of a constitutionally protected property or liberty interest. *Bd. Of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972). Although the constitution may protect a property interest, the constitution does not create the interest; instead, a property interest "stem[s] from an independent source such as state law." *Id.* at 577. Moreover, "[p]roperty interests protected by the due process clause must be more than abstract

7

desires for or attractions to a benefit." *Hamilton v. Myers*, 281 F.3d 520, 529 (6th Cir. 2002). The due process clause "protects only those interests to which one has a 'legitimate claim of entitlement.'" *Id.* (quoting *Roth*, 408 U.S. at 577).

It is important to point out that Kircher does not claim that he was entitled to have a certificate of compliance. Rather, Kircher argues that even without a certificate of compliance, he was deprived of certain property rights by Defendants' actions. Specifically, Kircher argues that he was denied due process when the house was vacated, when the water services were terminated, and when the house was secured.

*1. Whether Kircher had a property interest in allowing occupancy of the premises*

Kircher did not have a legitimate claim of entitlement to allow the premises to be occupied. Ypsilanti requires that rental units be certified by its building inspectors before the owner may allow the units to be occupied. *See* Ypsilanti Ord. §§ 18-146 to 18-149. It is a misdemeanor for an owner to permit occupancy of a rental unit that is not certified by the City. *See* Ypsilanti Ord. § 18-115. It is undisputed in this case that Kircher's premises was not certified. Therefore, he could not legally allow the rental units to be occupied. As a result, Kircher did not have a legitimate claim of entitlement to allow the occupancy of his property and he cannot claim that Defendants' actions violated his right to due process in this respect.

*2. Whether Kircher had a property interest in continuing water services*

Once a certificate of compliance expires, Ypsilanti requires that water services be discontinued to the particular dwelling. *See* Ypsilanti Ord. § 18-555. Presumably this is to deter occupancy of the dwelling without a certificate of compliance. The City caused the water services to be discontinued on or about June 25, 2002. It is undisputed that Kicher's certificate of compliance

8

expired prior to this date. Therefore, he had no legitimate entitlement to water services and he cannot claim that Ypsilanti violated his due process rights in this respect.

*3. Whether Kircher had a property interest in an unsecured vacant building*

Upon evacuating the premises, Defendants boarded the windows on the house and locked the doors. Kircher possessed the key to the doors and still had full access to the house. Kircher claims that he was denied due process when Defendants boarded the windows to his rental home without providing prior notice or an opportunity to be heard. Defendants contend that Kircher did not have a protected property interest in owning or possessing a vacant, unsecured rental dwelling. Defendants argue that under the applicable Ypsilanti ordinance, vacant buildings must be secured to prevent unauthorized access; therefore, since Kircher's premises was vacant he had no interest in keeping it unsecured.

This case is similar to cases addressing due process concerns that arise when a municipality attempts to abate a nuisance or demolish a dangerous structure. In these cases, the courts acknowledged the municipalities' power to abate nuisances as a proper exercise of its police power. *See Rental Prop. Owners Ass'n of Kent County v. City of Grand Rapids*, 455 Mich. 246, 255 (1997); *People v. McKendrick*, 188 Mich.App. 128, 136-37 (1991). "Generally, special or summary proceedings for abatement of nuisances are valid where they afford the essential elements of due process of law, namely notice and opportunity to be heard." *Rental Prop. Owners Ass'n*, 455 Mich. at 271. In cases where prior notice and a hearing was not practicable, due process could be satisfied by adequate post-deprivation procedures. *See Flatford v. City of Monroe*, 17 F.3d 162 (6th Cir. 1994). *See also Zinermon v. Burch*, 494 U.S. 113 (1990); *Parratt v. Taylor*, 451 U.S. 527, 539 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986); *Fuentes v. Shevin*, 407 U.S.

9

67 (1972); *Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994). Implicit in the nuisance cases is the plaintiffs' property interest protected by the Fourteenth Amendment. In other words, the courts in the nuisance cases had to recognize a cognizable property interest before analyzing whether the plaintiff had received due process. *See Roth*, 408 U.S. at 569 (stating that a plaintiff must be deprived of a cognizable property interest before a determination can be made as to what process is due). Whether that process must occur prior to or after the deprivation is not relevant to the question of whether a protectable property interest in fact existed.

In the present case, Ypsilanti's ordinances provide that a rental dwelling that does not have a valid certificate of compliance is considered vacant. Ypsilanti Ord. § 18-111. In addition, a vacant dwelling may be considered a dangerous building. *Id.* Pursuant to Ypsilanti's ordinances, vacant or dangerous buildings must be secured to prevent unauthorized access. *See* Ypsilanti Ord. § 18-193. The Ypsilanti ordinances provide that once a building official determines that a vacant or dangerous building is unsecured, notice must be given to the owner of the building to make the building secure. *Id.* If the owner of the building cannot be immediately notified or if the owner cannot make the building secure within one hour and the building official determines that it is necessary to immediately make the building secure, the building official shall take steps to secure the building, including boarding the windows. *Id.*

In this case, there is no question that Kircher's rental dwelling was a vacant building. It did not have a valid certificate of occupancy and, therefore, qualified as vacant. As such, the dwelling unit was required to be secured. However, certain conditions had to be met before the City could proceed to secure the structure. Specifically, the City had to attempt to notify Kircher and give him an opportunity to secure the structure within one hour. In addition, unlike the right to rent the

premises or the right to receive water services, not all of Kircher's interests incidental to ownership of the house were necessarily affected by the lack of a valid certificate of compliance. Similar to the nuisance cases, the Court finds the fact that Kircher was entitled to notice that the house was unsecured and an opportunity to secure the structure created a cognizable property interest under the Fourteenth Amendment.

Notwithstanding this property interest, the Court finds that genuine issues of material fact exist that preclude the Court from granting Defendants' motion at this time. The Court finds that the record is not sufficient to determine whether Kircher received due process. There is no evidence showing Kircher received notice that the building was not secure prior to Defendants' actions or that Defendants attempted to provide notice. Likewise the record is insufficient to determine whether Kircher could not have secured the premises himself or whether an emergency situation existed that required the City to immediately secure the premises. Therefore, the Court finds that discovery is necessary to develop the factual issues in this case. Consequently, the Court must deny Defendants' motion to the extent that Kircher's due process claim rests on Defendants' action of securing the house. Similarly, the record is also insufficient to address Defendants' arguments regarding qualified immunity, municipal liability and supervisory liability. However, the Court's denial of the motion at this time is without prejudice and Defendants are free to renew their motion following discovery.

## V. CONCLUSION

Based on the analysis set forth above,

IT IS ORDERED that Defendants' Motion for Summary Judgment is GRANTED as to Plaintiff Gloster.

IT IS FURTHER ORDERED that Defendant's motion is GRANTED as to Plaintiff Kircher's

Fourth Amendment claim and his procedural due process claim insofar as it is based on the termination of water services to the house and the eviction of the occupants of the rental unit.

IT IS FURTHER ORDERED that Defendants' motion is DENIED as to Plaintiff Kircher's procedural due process claim insofar as it is based on the securing of the rental unit by Defendants.

IT IS FURTHER ORDERED that Defendants' motion is DENIED as to their remaining arguments concerning qualified immunity, supervisory liability and municipal liability.

IT IS SO ORDERED.

s/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated: May 8, 2007

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on May 8, 2007.

s/Marie E. Verlinde
Case Manager
(810) 984-3290