UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID KIRCHER,

       Plaintiff,

CASE NO. 05-73425
HON. LAWRENCE P. ZATKOFF

v.

CITY OF YPSILANTI, CHARLES BOULARD,
OFFICER DORSEY, JOHN DOE police officer,
and ED KORYZNO, individually
and in their official capacity,

       Defendants.
_____/

## OPINION AND ORDER

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on May 9, 2008

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

This matter is before the Court on the parties' cross-motions for summary judgment. The parties have responded to each other's motion and filed exhibits supporting their respective positions. The Court finds that the facts and legal arguments are adequately presented in the parties' papers and the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. LR 7.1(e)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted. For the following reasons, Plaintiff's Motion for Summary Judgment [dkt. #41] will be DENIED and Defendants' Motion for Summary Judgment [dkt. #40] will be GRANTED.

## II. BACKGROUND

A.  **Factual Background**

This case arises from an incident on September 5, 2002, in Ypsilanti, Michigan. On that date, Defendant Boulard, an official in Ypsilanti's building department, arrived at the address of 49 S. Summit Street in Ypsilanti to investigate the suspected illegal occupancy of a rental house and to secure the premises. The house in question was registered with the City as a one- or two-unit rental property. As such, the City required a valid certificate of compliance for the house certifying that the house met the relevant building codes and ordinance requirements. The last certificate of compliance for the home in question expired in January 2002. Plaintiff David Kircher owned the rental property involved in this case as well as several others in Ypsilanti. He lives directly across the street from the house involved in this case.

Kircher had corresponded with Defendant Boulard prior to the incident that gave rise to this suit. In August 2001, Boulard sent notice to Kircher that his certificate of compliance was due to expire in January 2002, and that an inspection of the premises was required. Generally, certificates of compliance expire after two years. It is the home owner's responsibility to schedule an inspection of the building prior to the certificate's expiration. Boulard sent another notice in May 2002, which scheduled an inspection for June 17, 2002. Kircher responded to this notice in writing, stating "49 S. Summit is not rented. No inspection requested. Do not schedule until I call. Cancel 6/17/ at 3:30." Boulard subsequently honored this request and canceled the inspection. However, Boulard also notified Kircher that because the house was considered vacant, the water services were to be terminated according to the City's ordinances. Kircher did not respond to this notice, and the City terminated water services to the house on or about June 25, 2002.

On September 5, 2002, workers from the Ypsilanti Building Department noticed people on the porch of 49 S. Summit Street and moving in and out of the premises. Defendant Boulard and officials from the Building Department arrived on the scene and found the front door of the house open and heard loud music playing inside. Defendant Boulard requested police assistance and Defendant Dorsey, an Ypsilanti police officer, arrived later with two other officers. Officer Dorsey entered the home and found four individuals inside along with personal items and food, indicating that the house was occupied. Officer Dorsey questioned the occupants about their presence, indicated that no one should be occupying the house and instructed the individuals to collect their personal belongings and vacate the premises.

As the individuals were leaving the house, Defendant Boulard and the Building Department staff began to inspect the home. Based on the inspection, the home appeared unfit for human occupancy. The house had not had running water for over two months, and Defendant Boulard reported that trash was strewn throughout the house and human excrement filled one of the bathtubs. Because several people were occupying the house illegally, Boulard contacted John Ichesco,[1] the Fire Marshall for Ypsilanti, who was also acting Fire Chief. When Ichesco arrived, he observed several people being escorted from the premises and arguing with police officers. Boulard apprised Ichesco of the fact that the home did not have a valid certificate of occupancy and that the water had been shut off since June.

At or around this time, Kircher arrived at the scene. According to Ichesco, Kircher stated that his other rental properties had been broken into but were not secured. In addition, Ichesco was concerned that as an unoccupied dwelling, Kircher's property could be in danger of arson. In fact, Ypsilanti had a significant arson problem during 2002, in which a total of thirty-six arson

---

[1] Ichesco was named as a Defendant in this suit. However, the Court granted summary judgment in Ichesco's favor in an Opinion and Order dated October 4, 2006. *See* Docket #28.

fires occurred in a ten-month period, including three in the vicinity of 49 S. Summit within the previous week.

Pursuant to his authority as the acting commanding officer of Ypsilanti's fire department under the state fire code, Ichesco determined that an emergency situation existed that posed a risk to Kircher's property. The specific provision of the code Ichesco relied on provides that "[i]f ... the commanding officer of the fire department of a city ... determines a dangerous condition exists ... [he] ..., upon finding an emergency condition dangerous to persons or property, may take all necessary steps and prescribe all necessary restrictions and requirements to protect persons and property until the dangerous condition is abated." Mich. Comp. Laws § 29.7a. Due to the fact that several people had been occupying Kircher's home illegally and that the former occupants were lingering directly across the street from the premises, Ichesco determined that the home was not secure. Since the house was not secure, did not have running water, and in light of the city's recent arson problem, Ichesco concluded that the home was in immediate danger of an arson fire. Therefore, Ichesco found that the situation required immediate action to prevent further access to the home, specifically with regard to the people who had just been evacuated. As a result, he ordered that the house be secured by boarding the windows and locking the doors.

In order to secure the home, Ichesco contacted a company to board the windows and allowed Kircher to lock the doors. Kircher, however, possessed the keys to the locks and still had access to the home. The next day, Ichesco personally delivered a violation notice to Kircher's residence and also mailed him a copy. The notice detailed Kircher's violations as well as the underlying code provisions and informed him of the appropriate process for appealing Ichesco's orders. Specifically, Kircher could have appealed Ichesco's decision to board the

windows to the Washtenaw County Board of Appeals. Kircher took no action to appeal Ichesco's decision.

**B.     Procedural Background**

Kircher was prosecuted and convicted by a jury for violating Ypsilanti Ordinance § 18-146(b), which states: "[n]o person, either the owner or the owner's agent shall allow occupancy of a dwelling unit or sleeping unit after September 1, 1999, in a one- or two-unit rental dwelling, unless that owner or owner's agent has first obtained a valid certificate of compliance from the city building inspection department covering that unit." Ord. § 18-146(b). During the criminal action, Kircher contested the legality of the search of his premises, arguing that Defendants entered the house without a warrant. The trial court denied Kircher's motion to suppress the fruits of the search and ruled that it complied with the Fourth Amendment. A jury thereafter convicted Kircher of violating the Ypsilanti ordinance. Following his conviction, Kircher appealed to the Washtenaw County circuit court, which affirmed the conviction as well as the trial court's ruling on Kircher's Fourth Amendment argument. Kircher also attempted to appeal this decision to the Michigan Court of Appeals but was again denied "for lack of merit in the grounds presented."

Kircher filed the present action in federal court on September 6, 2005, alleging that Defendants violated his rights under the Fourth and Fourteenth Amendments. In an Opinion and Order dated May 8, 2007, the Court dismissed Kircher's Fourth Amendment claims and his Fourteenth Amendment claims to the extent they were based on Defendant's actions in evicting the persons illegally occupying 49 S. Summit and causing the water service to be terminated. The Court, however, did not dispose of Kircher's Fourteenth Amendment claim to the extent it was based on Defendants' actions in boarding the windows to the rental property. The Court

found that Kircher had a protected property interest in not having the windows boarded and found that the record was not sufficiently developed to rule as to whether Defendants deprived Kircher of this interest without due process. Based on the state-court criminal proceedings, the Court also concluded that several issues relevant to Kircher's procedural due process claim were barred by collateral estoppel. Specifically, Kircher cannot contest (1) that he did not have a certificate of compliance for the house; (2) that the house was a one- or two-unit rental dwelling; (3) that the house was in fact occupied at the time Defendants arrived, evacuated the house, and secured it; and (4) that occupancy of the house was illegal. After conducting discovery, Defendants now move for summary judgment as to Kircher's remaining due process claim.

### III. LEGAL STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Turner v. City of Taylor*, 412 F.3d 629, 637 (6th Cir. 2005). When deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A genuine issue of material fact exists when there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Id.* at 249 (citations omitted). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted).

These same rules of review apply where the parties have filed cross-motions for summary judgment. *Westfield Ins. Co. v. Tech Dry Inc.*, 336 F.3d 503, 506 (6th Cir. 2003). The court must evaluate each motion on its own merit and draw inferences against the party whose motion is being considered. *See Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## IV. ANALYSIS

Kircher's claim is brought pursuant to the Due Process Clause of the Fourteenth Amendment. Kircher claims that Defendants violated his right to due process when they summarily boarded the windows of his rental property without notice or an opportunity to be heard. To establish a procedural due process claim under 42 U.S.C. § 1983, Kircher must establish three elements: (1) that he has or had a constitutionally protected life, liberty, or property interest; (2) that he was deprived of this interest within the meaning of the due process clause; and (3) that the State did not afford him adequate procedural protections. *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999). There is no question in this case regarding the first two elements of Kircher's cause of action: the Court determined that Kircher had a protected property interest and that Defendants deprived him of this interest. The only remaining issue before the Court is the adequacy of the process Defendants provided to Kircher.

The Fourteenth Amendment prohibits States from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV sec. 1. However, "[n]othing in the Fourteenth Amendment protects against all deprivations of life, liberty, or property by the State." *Parratt v. Taylor*, 451 U.S. 527, 537 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Rather, "[o]nly those deprivations carried out without due process are actionable." *Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994). Fundamentally, due process requires notice and an opportunity to be heard "at a meaningful time and in a meaningful

7

manner." *Fuentes v. Shevin*, 407 U.S. 67, 81 (1972). Generally, this means notice and a hearing prior to a deprivation of life, liberty, or property. *Id.* at 82. Despite this general requirement, the Supreme Court has recognized that "the necessity of quick action by the State ... when coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking, can satisfy the requirements of procedural due process." *Parratt*, 451 U.S. at 539. Where exigent circumstances require quick state action, fundamental due process (an opportunity to be heard at a meaningful time and in a meaningful manner) is satisfied by providing adequate post-deprivation process. *Id.* at 540; *Harris*, 20 F.3d at 1401.

Defendants argue that exigent circumstances existed in this case that made meaningful pre-deprivation process impractical. Therefore, Defendants argue they did not violate Kircher's due process rights by failing to provide notice and an opportunity to be heard prior to boarding the windows on his rental property. The Court agrees with Defendants.

The Sixth Circuit addressed *Parratt's* emergency exception in *Flatford v. City of Monroe*, 17 F.3d 162 (6th Cir. 1994), which involved an emergency eviction of tenants in a rental building. The court recognized that "a prior hearing ... is not constitutionally required where there is a special need for very prompt action to secure an important public interest and where a government official is responsible for determining under the standards of a narrowly drawn statute, that it was necessary and justified in a particular instance." *Id.* at 167 (citing *Fuentes*, 407 U.S. at 91). The defendant building inspector in *Flatford* was confronted with unsafe conditions in a multi-unit apartment building: in the eighty-year old, wooden-framed structure, the defendant found numerous building code violations, including structural failure, extensive wood-rot, exposed electrical wiring, and the presence of combustibles. *Id.* at 165. Based on his

8

observations and experience, the defendant believed the tenants of the building, including the plaintiffs and their four children, faced an immediate risk of electrocution or fire. *Id.* Pursuant to his authority under a city ordinance, the defendant ordered that the building be evacuated. *Id.* The defendant did not provide notice or an opportunity to contest his findings prior to ordering the emergency evacuation, and the plaintiffs remained dispossessed for thirteen days. *Id.*

In their § 1983 action, the plaintiffs did not dispute the existence of the underlying conditions but argued that the defendant building inspector's conclusion that an emergency situation existed was incorrect and cited several alternatives to evacuation. *Id.* at 167-68. The *Flatford* court concluded that the defendant building inspector did not violate the plaintiffs' procedural due process rights by failing to provide pre-evacuation process where the record clearly contained "facts from which a reasonable building inspector could conclude that the occupants, and particularly the children, might be imminently endangered." *Id.* at 168. In doing so, the court rejected the district court's conclusion that the plaintiffs' apartment did not create an immediate risk of harm: "To determine whether [the defendant] exercised reasonable judgment, we must examine the [plaintiffs'] evidence concerning the condition of the structure as a whole, not merely the condition of the [plaintiffs'] unit in isolation of the units directly below. ... Dangerous conditions do not limit their consequences to the walls of a particular apartment." *Id.* at 167. When the plaintiffs' evidence was viewed in a broader light, the court found that it failed "to prove that a reasonable building inspector could not conclude that the condition of the wooden-framed structure posed an immediate threat to the safety of its occupants." *Id.* at 168. Accordingly, the defendant's failure to provide pre-deprivation process did not amount to a violation of the plaintiffs' right to due process. *Id.*

The Sixth Circuit confronted a similar situation in *Harris v. City of Akron*, *supra*, where the defendants ordered an emergency demolition of a severely damaged building. The defendant building inspector was investigating a two-story building that appeared close to collapsing onto a public street and a neighboring home. *Id.* at 1398. "The upper east wall of the building had moved inward four to five feet, and [the defendant] thought the roof was collapsing." *Id.* Based on these findings, and acting under his authority granted by the city building code, the defendant ordered that the building be demolished. *Id.* Although the defendant attempted to notify the plaintiff of the demolition, he was unable to contact him, and no pre-demolition hearing was provided. *Id.*

Similar to the plaintiffs in *Flatford*, the plaintiff in *Harris* did not contest the existence of the building's structural flaws. *Id.* at 1404. Instead, he maintained that the defendants reached their conclusion that an emergency existed too hastily, and presented an affidavit from a construction expert that described techniques, other than demolition, the defendants could have used to determine the true condition of the building and protect the public from harm. *Id.* at 1399-1400. The court found that the plaintiff's affidavit failed to raise a genuine issue of material fact. *Id.* at 1404. There was no question that the defendants had the authority to demolish the building. *Id.* The only question was whether the defendants made the right decision. *Id.* In the court's view, that question was not of constitutional significance. *Id.* "By attempting to show only that the defendants made the wrong decision, [the plaintiff] in no sense attacked the constitutionality of the process by which the decision was reached." *Id.* As such, the plaintiff did not have a due process claim. *Id.* at 1405.

As an initial matter, the Court rejects Kircher's argument that the section of the state fire code Ichesco relied on was not narrowly tailored.[2] That section states that "[i]f ... the commanding officer of the fire department of a city ... determines a dangerous condition exists ... [he] ..., upon finding an *emergency condition dangerous to persons or property*, may take all necessary steps and prescribe all necessary restrictions and requirements to protect persons and property until the dangerous condition is abated." Mich. Comp. Laws § 29.7a (emphasis added). The Court finds that the statute is not materially distinguishable from the ordinance in *Flatford*, which permitted the building code official to evict the plaintiffs upon a finding that "the building or structure [was] in such a condition as to make it *immediately dangerous to the life, limb, property, or safety of the public or its occupants* ...." *Flatford*, 17 F.3d at 167 (emphasis added). Although the terms of § 29.7a differ from the ordinance in *Flatford*, their scope is substantively identical. Contrary to the argument implied in Kircher's briefs, the statute need not describe every possible variation of emergency situation to satisfy the narrow-tailoring requirement. Therefore, the statute at issue in this case is sufficiently narrow to satisfy *Parratt's* emergency exception and left the determination of whether an emergency condition existed in the discretion of Ichesco. As in *Harris* and *Flatford*, protecting persons and property from such an emergency condition falls squarely within the exigent circumstances contemplated by the Supreme Court in *Fuentes* and *Parratt*.

As in *Flatford* and *Harris*, Kircher does not contest the existence of the conditions giving rise to Ichesco's belief that an emergency situation existed. Instead, Kircher argues that Ichesco,

---

[2]Relatedly, Kircher argues that Ichesco had no authority to act under § 29.7a absent a specific delegation of authority from the State Fire Marshal. This argument is belied by the plain language of the fire code, which only requires delegations of authority when municipalities hire fire inspectors to enforce the state rules promulgated pursuant to the code, *see* Mich. Comp. Laws § 29.2b, and § 29.7a itself, which specifically allows "the commanding officer of the fire department of a city" to take necessary actions in emergency situations.

11

like the defendants in *Flatford* and *Harris*, incorrectly determined that his rental property constituted a fire hazard. Similar to the plaintiff in *Harris*, other than his unqualified opinion that a fire hazard did not exist, Kircher has presented no evidence in support of his position. Thus, Kircher has failed to carry his burden to produce evidence sufficient to create a genuine issue of material fact for trial. *See* Fed. R. Civ. P. 56(c).

Viewing the record in the light most favorable to Kircher, the Court finds that the circumstances of this case required quick action making pre-deprivation process impracticable. The applicable provision of the state fire code permitted Ichesco to take steps necessary to abate a dangerous condition "upon finding an emergency condition dangerous to persons or property." Mich. Comp. Laws § 29.7a. When Defendants arrived at the rental home, they found it occupied by several individuals. Defendants' inspection of the home revealed deplorable living conditions with trash strewn throughout the home, insect infestations, no running water, and human feces in the bathtub. Any occupancy was illegal as the house was considered vacant due to the lack of a certificate of compliance. Thus, the mere fact that people were living in the house indicated that the home was not secure and that Kircher was either unwilling or unable to prevent access. In light of these facts and those revealed by the inspection, immediate action was necessary to secure the premises and alleviate the risk of an arson fire. In other words, as in *Flatford* and *Harris*, the record clearly contains facts from which Ichesco could have reasonably concluded that immediate action was necessary to abate a fire hazard. Under these circumstances, as in *Flatford* and *Harris*, Defendants were not obligated to provide notice and an opportunity to be heard prior to securing the house. In this case, just as in *Flatford* and *Harris*, an erroneous determination that no emergency existed would have resulted in the very threat that § 29.7a was

meant to prevent. *Harris*, 20 F.3d at 1404. Therefore, the Court concludes that Defendants did not violate Kircher's due process rights by failing to provide pre-deprivation process.

Kircher's argument that the house did not constitute a fire hazard is unpersuasive for the same reasons the *Flatford* court rejected the district court's analysis of that case. Similar to the district court in *Flatford*, Kircher's evaluation of the circumstances is too narrow: he contends that a fire hazard did not exist because Ichesco did not identify a specific structural problem that would itself cause a fire. Further, Kircher states that Ichesco could not have believed the house was not secure because the windows were not broken and could be locked. Yet, like the district court did in *Flatford*, Kircher overlooks the recent outbreak of arson fires in the immediate vicinity of the premises, the fact that the house was actually occupied illegally, and the fact that it did not have running water. These conditions surely could constitute a fire hazard regardless of whether a specified structural defect existed. Likewise, it was reasonable for Ichesco to conclude that the house was not secure based simply on the fact that it was actually occupied by several people when he arrived and that these same people were lingering directly across the street. As Ichesco repeatedly stated during his deposition, Kircher ignored the presence of the "human element" that was aggravating the situation. *See, e.g.*, *Reynolds v. Krebs*, No. 06-123, 2008 WL 788603, at *2 (W.D.N.Y. Mar. 20, 2008) (finding the presence of an emergency situation where the building official based his decision to demolish a damaged building, in part, on the fact that high winds were in the forecast). More importantly, whether Ichesco was correct in his determination is not constitutionally relevant. Just as the court in *Harris* concluded, "[b]y attempting to show only that [Ichesco] made the wrong decision," Kircher "in no sense attacked the constitutionality of the process by which that decision was reached." *Harris*, 20 F.3d at 1404; *see also Catanzaro v. Weiden*, 188 F.3d 56, 63 (2d Cir. 1999) (relying on *Hodel v. Virginia*

*Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 302-03 (1981)) (stating that "when there is competent evidence allowing the official to reasonably believe that an emergency does in fact exist ... the discretionary invocation of an emergency procedure results in a constitutional violation only when such invocation is arbitrary or amounts to an abuse of discretion").

Having found that Kircher was not entitled to pre-deprivation process under the circumstances of this case, the Court must address whether Defendants provided Kircher with adequate post-deprivation process. The Court notes that the deprivation alleged was neither as permanent as a demolition, like the deprivation in *Harris*, nor as severe as an eviction, like the deprivation in *Flatford*. Defendants merely caused a temporary deprivation of Kircher's limited property interest in keeping the windows of his unsecured rental property open. "Where only property rights are involved, mere postponement of the judicial enquiry is not a denial of due process, if the opportunity given for ultimate judicial determination of liability is adequate." *Harris*, 20 F.3d at 1404 (quoting *Parratt*, 451 U.S. at 540). The Court finds that the post-deprivation process available to Kircher in this case was adequate.

After securing Kircher's house, Ichesco returned to his office and prepared a notice detailing the statutory authority for his actions and Kircher's violations. That notice also states "YOU HAVE THE RIGHT TO APPEAL THROUGH THE WASHTENAW COUNTY BOARD OF APPEALS." In a later section titled "Means of Appeal," the notice specifically outlines the method by which Kircher could have appealed Ichesco's decision to board the windows. Ichesco personally left a copy of this notice at Kircher's residence the day after the windows were secured and mailed a copy to Kircher. Kircher acknowledges that he received a copy of this notice and admits that he did not make use of the appeals process. Thus, within twenty-four hours of the deprivation, Kircher was given notice of the reasons his windows were

boarded, the facts supporting the decision to secure the premises, and a means of contesting that decision. Kircher retained access to and possession of the house and simply refused to use the process available to him. Under these circumstances, where the property interest was minimal and the deprivation temporary, Kircher received all of the process to which he was entitled. *See Gardner v. McGroarty*, No. 99-1634, 2002 WL 32107213, at *6 (M.D. Pa. Mar. 26, 2002), *aff'd*, 68 Fed. Appx. 307 (3d Cir. 2003) (concluding that the defendants provided adequate post-deprivation process to the plaintiff landlord where he was expressly informed of the appeals process but failed to use it); *but see Flatford*, 17 F.3d at 168-69 (finding the defendant building inspector failed to provide the plaintiffs with adequate post-deprivation process where the defendant failed to notify the plaintiffs of the procedure for appealing the eviction); *Fitzpatrick v. City of Dearborn Heights*, 105 Fed. Appx. 733, 735-36 (6th Cir. 2004) (finding the post-deprivation process was inadequate where the defendant did not provide the opportunity for a timely hearing to contest an emergency eviction and the scope of the hearing precluded the plaintiff from contesting the substance of the defendants' decision to evict). Because Kircher had adequate post-deprivation process available to him and failed to make use of that process, his Fourteenth Amendment claim must fail. *See, e.g.*, *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000) ("If there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants.").

Finally, Kircher, for the first time, argues that Defendants condemned his house without due process of law. The record demonstrates, however, that while the house could have been condemned for several reasons, no condemnation proceedings ever took place. Therefore, this argument is baseless. Having determined that no constitutional violation occurred, the Court

need not address Defendants' arguments concerning qualified immunity and supervisory liability.

## IV. CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Defendants' Motion for Summary Judgment is GRANTED, Kircher's Motion for Summary Judgment is DENIED, and Kircher's claim is DISMISSED in its entirety.

IT IS SO ORDERED.

Date:  May 9, 2008

s/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE